**Arlington**

MARGARET H. MCGINNIS

v.

DONN EVANS MCGINNIS

No. 0094-85

Argued April 30, 1985

Decided December 17, 1985

COUNSEL

Murray M. Van Lear, II (Woodbridge, Van Lear, Reamy & Frackelton, on brief), for appellant.

Carroll E. Smith, for appellee.

OPINION

**DUFF, J.**—Margaret H. McGinnis (wife) appeals from a final decree of the chancellor that granted a no-fault divorce, fixed spousal support for her at $7,800 per year, assigned various property of the parties, including the husband's anticipated retirement income, and awarded her attorney's fees. Donn Evans McGinnis (husband) has filed a cross-appeal that also challenges various rul-

ings of the chancellor.

The questions presented raise four basic areas of inquiry: (1) whether the chancellor was correct in granting the parties a no-fault divorce rather than awarding the wife a divorce on the grounds of desertion; (2) whether the chancellor equitably distributed the marital property in accordance with Code § 20-107.3; (3) whether an award of $7,800 spousal support was an abuse of discretion; and (4) whether there was an abuse of discretion in requiring the husband to pay $1,000 toward the wife's counsel fees. These issues will be addressed in the order stated.

## I. NO-FAULT DIVORCE

The parties were married in 1955. At the time of the final decree, the wife was 49 years old, the husband was 52, and the two children born of the marriage both were over 18 years of age. The husband is an FBI agent and in 1983 earned a gross annual salary of $53,385.53. The wife's income in 1984 was $14,000 per year. They owned a home jointly, a private airplane, and two automobiles.

The wife alleged in her Bill of Complaint that her husband deserted her on January 24, 1983, the date he admittedly left home. He denied desertion, contending that the separation was by mutual agreement and that he was justified in leaving because of his wife's abusive conduct toward him and her bizarre and erratic behavior.

Disharmony between the parties commenced several years prior to the separation. The evidence was in sharp conflict regarding the intention of each at the time of the final separation. The wife testified that she could not believe her husband was leaving home, that she did not want him to go, and that there had been only a minor disagreement between them during the two months preceding his leaving. She testified further that she had been diagnosed as manic depressive, and that this condition was controlled by medication.

The husband's evidence, however, described disharmony since his wife became ill in the summer of 1979. He related incidents in which his wife grabbed his pipe from his mouth and hit him with it and rages during which his wife threw dishes and destroyed

things in the kitchen. Once she grabbed a butcher knife, which he took from her. On another occasion she kneed him in the groin in a motel parking lot. After one argument, she discharged his service revolver in an upstairs bedroom. According to the husband, confrontations such as these occurred about once a month.

Shortly before the separation, the husband said his wife presented him with a separation agreement, told him she wanted a divorce, and asked him to leave.

Although the evidence was conflicting, the chancellor's determination that the wife had not established desertion by the husband was supported by credible evidence. Under familiar principles, we are bound by his determination and affirm the final decree in this respect. Code § 8.01-680; *Furr* v. *Arnold*, 202 Va. 684, 689, 119 S.E.2d 242, 246 (1961); *see Smith* v. *Board of Supervisors*, 201 Va. 87, 91, 109 S.E.2d 501, 505 (1959).

## II. EQUITABLE DISTRIBUTION

The parties were not able to agree on the division of their marital property and moved the court to make an equitable award under Code § 20-107.3.

By final decree, the chancellor partitioned the home equally, allocated the contents of the home to the wife, as well as a 1970 Oldsmobile in her possession, and allotted to the husband a private airplane, motorcycle, and 1978 El Camino automobile in his possession. With respect to the husband's retirement benefits, the court ordered:

> Defendant's retirement benefits will be allotted two-thirds to defendant and one-third to complainant, each party to receive his or her respective share as and when the retirement benefits become due and are paid.

Two issues are presented by the decree's provisions for equitable distribution: (1) the chancellor's allocation of the personal property and (2) the division of the husband's retirement benefits. Neither party challenges the classification of the personal property as marital, but both parties contest the manner and substance of the court's distribution thereof, particularly the retirement

benefits.

With respect to the various items of personal property, the court allotted or assigned these to the parties as previously indicated. All such items were titled in the husband's name, with the exception of the household furnishings, about which the record is silent. The statute does not confer such authority. While Code § 20-107.3(C) empowers the court to partition marital property in the *names of both parties*, nowhere else in the statute is the court authorized to assign, allot, or divide marital property titled either in both names or a single name, absent agreement between the parties. The trial court erred in allotting to the wife personal property titled in the husband's name.

A further question is presented by the allotment of one-third of the husband's retirement benefits to the wife. As Code § 20-107.3(D) read at the time of trial, the court was authorized to grant "a monetary award, payable . . . in a lump sum or over a period of time in fixed amounts." Nowhere in the statute was the court specifically authorized to direct payment of a percentage of pension, profit sharing, or retirement benefits independent of the monetary award. The present value of such benefits, however, was one of the various factors to be considered in determining the amount of the award. Code § 20-107.3(E)(8).[1] The court, in an appropriate case, could direct payment of a percentage of pension benefits toward the satisfaction, in whole or in part, of a monetary award. However, the award must be a specific, presently ascertainable amount and must be the result of the court's consideration of the factors enumerated in the statute.

We do not disapprove of an approach in which a monetary award is calculated by determining the respective rights and equities of the parties in the various items of marital property, considered individually, based upon the factors enumerated in Code § 20-107.3(E)(1)-(11) and fixing the monetary award based upon the aggregate value thereof. The present record, however, is silent as to whether the chancellor took into consideration the various

---

[1] The 1985 amendment to the statute (effective July 1, 1985) authorized the court to direct payment of a percentage of pension, profit sharing, or retirement benefits, whether vested or nonvested, in a lump sum or over a period of time and only as such benefits are payable. Code § 20-107.3(G). Significantly, subparagraph (E)(8), providing that the present value of retirement benefits is a factor to be considered in determining the award, was retained in the amended statute.

factors contained in the statute or whether he intended that the division of the retirement benefits be the monetary award. Upon remand, the statutory factors should be considered and appropriately applied.

## III. SPOUSAL SUPPORT

Code § 20-107.1 directs the court, in determining support and maintenance for a spouse, to consider nine factors, including the duration of the marriage and the provisions made with regard to the marital property under Code § 20-107.3. Although the record is silent regarding consideration of these factors, there is evidence therein relating to each of them. We assume that the trial judge followed the statutory mandate. However, since the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings. Accordingly, the provisions regarding spousal support are vacated and remanded.

## IV. COUNSEL FEES

■ The trial court awarded $1,000 as counsel fees to the wife. The husband, cross-complainant, assigns this award as error, citing *Robertson* v. *Robertson*, 215 Va. 425, 211 S.E.2d 41 (1975) in support of his contention that there is no evidence in the record to explain how the court arrived at the amount awarded. In *Robertson*, the Supreme Court remanded an award of $10,000 counsel fees, finding nothing in the record to justify the award. The trial court was directed to fix an amount from a proper showing "of what is reasonable." *Id*. at 430, 211 S.E.2d at 45. The Supreme Court did not hold or intimate that the fee was excessive; it simply could not tell from the record.

We believe the key to a proper award of counsel fees to be reasonableness under all of the circumstances revealed by the record. Although evidence of time expended by counsel and the charges made to the client is the preferred basis upon which a trial judge can formulate a reasonable award, it is not the only basis. A trial court is not unmindful of the usual charges within its jurisdiction, and when viewed in the light of the circumstances of a particular case, a relatively modest award may be found to be reasonable.

The case at bar was a vigorously contested action with claims of desertion and an assertion of justification by the husband, a contested claim for spousal support, and prayers filed by both parties for equitable distribution of the marital property. Under these circumstances, we hold that from the record, the award of $1,000 is reasonable. Accordingly, that aspect of the final decree is affirmed.

The case will be remanded for further proceedings in accordance herewith.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Barrow, J., and Coleman, J., concurred.